Loretta Lynn **LEKAN**, Claimant and Surviving Spouse of John Frank Lekan, III, Deceased, Claimant,

v.

**P & L FIRE PROTECTION CO.** and **State Insurance Fund,** Respondents.

No. 53437.

Supreme Court of Oklahoma.

April 8, 1980.

DeVilliers & DeVilliers by W. Rodney
DeVilliers, Sr., Oklahoma City, for claimant.

Michelin DeLier, State Insurance Fund,
Oklahoma City, for respondents.

OPALA, Justice:

By the 1977 amendments which established the Workers' Compensation Act effective July 1, 1978,[1] the aggregate weekly income benefits[2] due all eligible survivors of a worker who died from a compensable injury cannot exceed the rate for permanent total disability[3]. That rate stands limited by § 22(6) to:

". . . Seventy-five Dollars ($75.00) per week beginning as of the effective date of the Workers' Compensation Act [July 1, 1978], and Ninety Dollars ($90.00) per week beginning January 1, 1979, and One Hundred Ten Dollars ($110.00) per week beginning January 1, 1980, and to sixty-six and two-thirds percent (66⅔%) of the state's average weekly wage beginning January 1, 1981 . . ."

The eligible survivors of the worker who died October 13, 1978, received, in the aggregate, a weekly income benefit award of $75.00—the rate for permanent total disability in effect at the time of decedent's death.[4] This rate, the trial tribunal ruled, was applicable in the case from the very inception to the termination of weekly benefit payments.

The sole question claimant presents on review is whether the quoted language in the provisions of § 22(6) should be construed as a schedule of benefits on a graduated scale or as a table of progressive rate increases with each level applicable, to the exclusion of all others, to injury or death occurring during the specific period for which it is fixed. We hold that the terms of § 22(6) afford *no* legislative authority for judicial application of benefit rates in excess of those prescribed by statute as a maximum in effect for the period during which injury or death occurs. The trial tribunal's order limiting the survivors' aggregate weekly income benefits to $75.00 —the maximum rate in force when death took place—is hence free from error of law.

The claim for benefits and the correlative duty to pay them are governed by the provisions of the law in effect when injury or death occurs.[5] It is at this point in time that the right becomes vested and the obligation is fixed.[6] The compensation rate to be applied in each case is that which was prescribed by statute for the period during which the compensable event—injury or death—takes place.[7] The rate so fixed governs not only the principal claim. It extends, with like force and effect, to ancillary proceedings on a change in a worker's condition and to those for increased compensation against the Special Indemnity Fund.[8] These basic compensation-law principles came to be settled by case law pronounced long before the passage of the 1977 Act.[9] The amendments of that year contain *no* incompatible or contradictory language. On the contrary, their provisions appear either consistent with, or expressly reconfirm, those prior decisions of this court which declare both the rights and

1. 85 O.S.Supp.1977 § 1; Okla.Sess.Laws 1977, Ch. 234 § 64. All section citations in the text of this opinion are to Title 85. The word "Act" is used in reference to the 1977 Workers' Compensation Act.

2. This term is used to designate weekly benefits to a worker's eligible survivors. 85 O.S. Supp.1977 § 22(8).

3. 85 O.S.Supp.1977 § 22(8)(c).

4. The last paragraph of 85 O.S.Supp.1977 § 3.6 D provides, inter alia, that ". . . *benefits for death shall be determined by the law in effect at the time of death.* [emphasis added]

5. *Independent School District No. 89 v. McReynolds,* Okl., 528 P.2d 313, 316 [1974]; *Apple v. State Insurance Fund,* Okl., 540 P.2d 545, 547 [1975]; *Washabaugh v. Bartlett Collins Glass Co.,* 177 Okl. 159, 57 P.2d 1162 [1936].

6. *Special Indemnity Fund v. Michaud,* Okl., 345 P.2d 891, 893 [1959]; *General Electric Company v. Folsom,* Okl., 332 P.2d 950, 953 [1958].

7. *Independent School District No. 89 v. McReynolds,* supra note 5; *Caswell v. Bird,* 160 Okl. 224, 16 P.2d 859 [1932].

8. *Special Indemnity Fund v. Bramlett,* 201 Okl. 415, 206 P.2d 972, 974 [1949]; *Special Indemnity Fund v. Acuff,* Okl., 383 P.2d 630, 633 [1963]; *Special Indemnity Fund v. Reynolds,* 199 Okl. 570, 188 P.2d 841, 842 [1948].

9. *General Electric Company v. Folsom,* supra note 6.

obligations fixed as of the time of injury or death.[10]

■ Legislative familiarity with extant judicial construction of statutes in the process of being amended is presumed. Unless a contrary intent clearly appears or is plainly expressed, the terms of amendatory acts which retain the same, or not substantially dissimilar, portions of provisions formerly in force will be accorded the construction identical to that placed upon them by preexisting case law.[11]

■ On review of the pertinent part of § 22(6) here under construction we find *no* language or indication that would warrant a sharp break with our past pronouncements. The primary consideration in the judicial search to discover the correct meaning of a statute is the intent of the legislature. The purpose intended to be accomplished by the enactment "also claims a degree of consideration." [12] Any doubt about the meaning of a statute may be resolved by reference to its history.[13] Our review of the historical antecedents reveals that the 1977 revisions here before us reflect our legislature's response to the call of the National Commission on State Workmen's Compensation Laws [14] for a *"gradual increase* of benefits . . . with *progressive* increases designed to reach *eventually* a percentage of the *state's* average weekly wage, a figure which presumably would better reflect contemporary costs of living." [15] The terms of § 22(6), construed

with the other 1977 amendments that govern benefit rates, unmistakably demonstrate legislative intent *progressively* to increase benefit levels for each identified annual period during which the injury or death may occur until the highest legislatively attainable rate is reached.[16] The obvious purpose in this approach was to cushion the economic impact of the increase by *gradually* raising compensation levels to that plateau—both desired and reachable—which was the closest to the National Commission's goal of replacing "a substantial amount of the injured worker's lost earnings." [17]

■ We find no indication in the 1977 Act of any intent to depart from the longstanding legislative policy of applying, in compensation claims, a fixed-rate regime based on the level of benefits in effect when injury or death occurs. The trial tribunal's order is accordingly sustained.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, BARNES, SIMMS, DOOLIN and HARGRAVE, JJ., concur.

HODGES, J., dissents.

---

10. See the last paragraph of 85 O.S.Supp.1977 § 3.6 D, supra note 4; 85 O.S.Supp.1977 § 3.1 B; 85 O.S.Supp.1977 § 22(6) and (8)(c).

11. *Horath v. Pierce*, Okl., 506 P.2d 548, 553 [1973]; *Letteer v. Conservancy District No. 30*, Okl., 385 P.2d 796, 800–801 [1963]; *Larkin v. Hiittenmeyer*, 195 Okl. 669, 161 P.2d 749, 750–751 [1945].

12. *Sheridan Oil Co. v. Superior Court of Creek County*, 183 Okl. 372, 82 P.2d 832, 834 [1938].

13. *Sheridan Oil Co. v. Superior Court of Creek County*, supra note 12, at 834.

14. Report of the National Commission on State Workmen's Compensation Laws 19 [1972].

15. Comment by Laurence M. Huffman, Workmen's Compensation: National Commission on State Workmen's Compensation Laws: Import for Oklahoma, 26 Okla.L.Rev. 446, 448 [1973]; Honorable Chris Sturm, The Workers' Compensation Act of 1977, 3 Okla.City Univ.L.Rev. 1, 22 [1978].

16. Sturm, supra note 15 at 21.

17. Comment by Laurence M. Huffman, supra note 15 at 448.